IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                              :       CASE NO. 05-02984

EFRAIN SALICUP SANTIAGO;                            :
ZULMA I. MALAVE GUZMAN                              :       CHAPTER 13

        Debtors                                     :

EFRAIN SALICUP SANTIAGO;                            :
ZULMA I. MALAVE GUZMAN                              :       ADVERSARY NO. 07-0004

        Plaintiffs                                  :

vs.                                                 :

COOPERATIVA DE AHORRO Y                             :
CREDITO NUESTRA SENORA DE LA
CANDELARIA                                          :

        Defendant                                   :

COOPERATIVA DE AHORRO Y                             :
CREDITO NUESTRA SENORA DE LA
CANDELARIA                                          :

        Third-Party Claimant                        :

COOPERATIVA DE SEGUROS                              :
MULTIPLES DE PUERTO RICO                            :

        Third-Party Defendant                       :

                                                    :

OPINION AND ORDER

        This case is before the court upon the motion for summary judgment filed on August 13, 2008 by Cooperativa de Seguros Múltiples de Puerto Rico (hereinafter referred as "Third Party Defendant"or "CSMPR" ) alleging that the policy issued by them does not cover illegal or willful violations of the automatic stay since the same are specifically excluded from the policy for being intentional acts that carry the imposition of civil sanctions. Cooperativa de Ahorro y Crédito Nuestra Señora de la Candelaria (hereinafter referred to as "Coop Candelaria" or "Third Party Claimant") filed an "Opposition to Motion For Summary Judgment" on August 29, 2008 (Docket No. 56). For the

reasons set forth below the motion for summary judgment is granted.

Facts and Procedural Background

Plaintiffs Efraín Salicup Santiago and Zulma I. Malavé Guzmán ("Plaintiffs") filed an adversary proceeding against Coop Candelaria, et als. on January 22, 2007 alleging that Coop Candelaria violated the automatic stay under the provisions of the Bankruptcy Code, 11 U.S.C. § 362(a). On September 4, 2007, Coop Candelaria filed a Third Party Complaint against CSMPR alleging that the same had a duty to cover and provide legal representation to Coop Candelaria in the adversary proceeding regarding the violation of the automatic stay (p. 2 of complaint). In the alternative, the Third-Party Claimant sustains that CSMPR failed to properly advise it that it needed an "errors and omissions" and/or personal injury policy or coverage (p. 6-7 of complaint). After requesting a 30 day extension of time to file the answer to the third-party complaint, CSMR filed its answer on October 25, 2007 (Docket No. 27).

On August 13, 2008 CSMPR filed a "Third Party Defendant (CSM) Motion for Summary Judgment" (Docket No. 50) requesting the dismissal of the third-party complaint, namely, because the policy issued by CSMPR does not cover violations of the automatic stay, given that the same are intentional acts that carry the imposition of civil sanctions. The Third-Party Claimant filed an "Opposition to Motion for Summary Judgment" along with the "Statement of Uncontroverted and Controverted Facts in Support of Opposition to Motion for Summary Judgment" on August 29, 2008 (Docket No. 56 and 57). The Third-Party Claimant alleges that the exclusion clause for "personal injury" under said insurance policy applies in cases that arise "out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured" and given that § 362 of the Bankruptcy Code is not a penal statute, the arguments made by CSMPR should be denied (p. 5 of Opposition to Motion for Summary Judgment). The Third-Party Claimant also sustains in the alternative that CSMPR is liable because it failed to properly safeguard Coop Candelaria against automatic stay violations when it conducted the assessment of the risks and insurance needs of Coop Candelaria (p. 2 of Opposition to Motion for Summary Judgment).

Applicable Law and Analysis

*Standard for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure 3d§ 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st

3

Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

### Uncontested Material Facts

1. CSMPR issued Policy No. CPP-0508841-6 to Coop Candelaria.

2. Section I (A)(1)(b) of the Commercial General Liability Coverage Form of the policy states, "This insurance applies to "bodily injury" and "property damage" only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
(2) The 'bodily injury' or 'property damage' occurs during the policy period."

3. Section I, Exclusions, (A)(2)(a) of the policy states: "This insurance does not apply to:

(a) Expected or Intended Injury
'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

4. Section V, Definitions, (3) defines the term 'bodily injury' as " bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. Section V, Definitions, (12) defines the term 'occurrence' as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

6. Section I(B)(2) refers to the exclusions under coverage for personal and advertising injury liability and provides that, "This insurance policy does not apply to:
(a) 'Personal injury' or 'advertising injury':
(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
(2)Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
(3) Arising out of willful violation of a penal statute or ordinance committed by or with the consent of the insured;
(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or
(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

*Insurance Contracts*

Insurance is defined "as a contract whereby one undertakes to indemnify another, or to pay or provide a specified or ascertainable benefit upon determinable contingencies therein foreseen. The term insurance includes reinsurance." 26 L.P.R.A. § 102 (2006).  The Insurance Code of Puerto Rico establishes that, "every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made part of the policy." 26 L.P.R.A. § 1125 (2006). The Puerto Rico Civil Code applies only as a source of supplemental law for the interpretation of insurance contracts. Echandi Otero v. Stewart Guaranty Co., 2008 T.S.P.R. 126, 14 citing Banco de la Vivienda v. Underwriters, 111 D.P.R. 1 (1981); Molina Texidor v. Centro Recreativo Plaza Acuatica, 2005 T.S.P.R. 172; Articles 1233-1241 of the Puerto Rico Civil Code, 31 L.P.R.A. §§

5

3471-3479.

An insurance contract, as all contracts, is the law between the parties. Echandi Otero v. Stewart Guaranty Co., 2008 T.S.P.R. 126 citing López Castro v. Atlantic Southern Ins. Co., 158 D.P.R. 562 (2003); Monteagudo Pérez v. E.L.A. 2007 T.S.P.R. 153. Thus, insurance contracts are interpreted on the basis of its terms and conditions, as expressed in the policy. Coop. Ahorro y Créd. Oriental v. S.L.G., 158 D.P.R. 714 (2003). The interpretation of a policy should be consonant with the norms imposed by the Puerto Rico Insurance Code and mandates interpreting those contracts globally, pursuant to the total terms and conditions in the policy. Soc. de Gananciales v. Serrano, 145 D.P.R. 394 (1998).

If the terms, conditions and exclusions of an insurance contract are clear, specific and without margin for ambiguities or different interpretations, the contract must be interpreted according to the parties' intentions. If there are no ambiguities, then the provisions of the contract are obligatory to the parties. Martínez Pérez v. U.C.B., 143 D.P.R. 554 (1997). However, if there is ambiguity in the insurance contract, then the insurance policy stipulations are construed liberally in favor of the insured and strongly against the insurer. Meléndez Piñero v. Levitt & Sons 129 D.P.R. 521, 547 (1991) citing Casanova v. P.R.- Amer. Ins. Co., 106 D.P.R. 689 (1978); Ferrer v. Lebrón García, 103 D.P.R. 600 (1975); Rivera v. Insurance Co. of P.R., 103 D.P.R. 91 (1974); Pérez Escolar v. Collado, 90 P.R.R. 785 (1964); Barreras v. Santana, 87 P.R.R. 215 (1963).

Exclusion clauses in an insurance contract are read in conjunction with the general coverage agreement, and independently of the rest of the contract. Meléndez Piñero v. Levitt & Sons, 129 D.P.R. 521, 548. "Its reading must be 'seriatim,' not cumulative. If an exclusion applies, there is no coverage regardless of the inferences or qualifications present in the rest." Id.

*Commercial General Liability Coverage*

The issue before this court is whether the policy issued by CSMPR provides coverage for willful violations of the automatic stay pursuant to § 362(a) of the Bankruptcy Code. According to the complaint, Coop Candelaria willfully violated the automatic stay since it had full knowledge of

6

the filing of the bankruptcy petition and filed a proof of claim (complaint 3). Plaintiffs allege that the willful violation of the automatic stay consisted of Coop Candelaria having sent via regular mail a payment booklet of the general unsecured debt in the amount of $7,899.04, and pursuing collection of this debt (complaint p. 2). Plaintiffs allege that they received this payment booklet on October 28, 2006 (complaint p. 3). The Plaintiffs further allege that the willful violation of the automatic stay placed them in a state of anguish and anxiety (complaint p. 4). Thus, according to Plaintiffs' pleadings in the complaint their state of anguish and anxiety was caused by the alleged willful violation of the automatic by Coop Candelaria.

Coop Candelaria is insured with CSMPR, policy number CPP-0508841-6, for the period of July 26, 2006 until July 26, 2009. The policy provides coverage for the following: (i) commercial property and (ii) commercial general liability. All coverage parts in this policy are subject to the "Common Policy Conditions."

The "Commercial General Liability Coverage Form" (the "CGLCF") is divided into 5 sections which consist of the following: (i) coverages; (ii) who is insured; (iii) limits of insurance; (iv) commercial general liability conditions and (v) definitions. In the case at hand, the applicable sections are the coverages section and the definitions section. It is important to note that the CGLCF has several introductory paragraphs before discussing the above-referenced sections. The first introductory paragraph of the CGLCF establishes that, "[V]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and what is not covered."

The first section (coverages) of the CGLICF is further subdivided into three types of coverages which consist of the following: (a) bodily injury and property damage liability; (b) personal and advertising injury liability and (c) medical payments. For purposes of our analysis we will only discuss items (a) and (b).

Section V of the CGLCF provides various definitions relevant to our analysis. These are:
" 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Section V(3)).

7

" 'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

(a) False arrest, detention or imprisonment;

(b) Malicious prosecution;

(c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

(d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

(e) Oral or written publication of material that violates a person's right of privacy." (Section V(13)).

"'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Section V(12)).

Section I(A)(1)(a) of the CGLCF under the heading "Insuring Agreement" establishes that, "...we will have no duty to defend the insured against any 'suit" seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Also, Section I(A)(1)(b) provides the following with respect to bodily injury and property damage, "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury' or 'property damage' occurs during the policy period."

Section I(A)(2)(a) provides the exclusions under the coverage for bodily injury and property damage liability. The exclusions for bodily injury and personal injury provide the following:

"This insurance does not apply to:

(a) Expected or Intended Injury- "'Bodily injury or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or liability."

Thus, for a willful violation of the automatic stay to be covered under the CGLCF as "bodily injury" or "property damage" it would have to be caused by an "occurrence." This term is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Section V(12) of the CGLCF). Also, "once the creditor becomes aware of the filing of

the bankruptcy petition and therefore the automatic stay, any intentional act is 'willful.'" Alan N. Resnick and Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.11[3] (15th ed. 2008) citing Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265 (1st Cir. 199 9); In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3rd Cir. 1992) (act done intentionally with knowledge that bankruptcy petition has been filed is a willful violation of stay). Furthermore, under the exclusion clauses of coverage for bodily injury and property damage liability the CGLCF specifically excludes, " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." (Section I(A)(2)(a) of CGLCF). Also, there is no "occurrence" as there is no unintended accident or action involved. By its very nature a violation of the automatic stay, in order to be sanctioned, must be willful. Alan N. Resnick and Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.11[3] (15th ed. 2008).

Section I(B) of the CGLCF provides the terms and exclusions for the personal and advertising liability coverage. A perusal of the definitions section of the terms personal injury (Section V(13) of the CGLCF) and advertising injury (Section V(1) of the CGLCF) clearly provide that the state of anguish and anxiety of the Plaintiffs due to the alleged willful violation of the automatic stay did not arise out of one or more of the offenses specifically provided for in the CGLCF insurance contract.

Finally, this court has not been placed in a position to properly adjudicate the Third-Party Claimant's alternative position, that CSMPR is liable because it failed to properly safeguard Coop Candelaria against automatic stay violations when it conducted the assessment of the risks and insurance needs of Coop Candelaria.

### Conclusion

For the reasons stated above, this court holds that a willful violation of an automatic stay is not covered under the terms of the CGLCF insurance policy, as such action is not a bodily injury, property damage, personal injury, or any other type of compensable injury. On the contrary, a violation of the automatic stay is an intentional act warranting the imposition of sanctions.

In view of the foregoing, the Third-Party Defendant's motion to dismiss the third-party complaint is hereby GRANTED. Judgment shall be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March 2009.

_____
ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge
